■ Security Pacific National Bank, Respondent, v Tracie Evans, Appellant, et al., Defendants. [820 NYS2d 2]—

Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered June 7, 2002, which, upon granting plaintiff's motion for reargument, vacated a prior order, same court and Justice, entered October 19, 2000, reinstated a July 1994 judgment of foreclosure and sale and a June 1995 referee's deed of sale, and directed the Civil Court to reinstate a warrant of eviction in plaintiff's favor against tenants Tracie Evans and Steven O'Keefe, affirmed, without costs.

In this 14-year-old mortgage foreclosure action, Supreme Court properly determined that any present objection by defendant Evans to plaintiff Security Pacific's standing or legal capacity to sue was waived by Evans's failure to include either defense in her answer or a preanswer motion to dismiss (CPLR 3211 [a] [3]; [e]).

The dissent argues that plaintiff lacks standing because at the time it commenced the foreclosure action, it no longer

existed as an independent entity by virtue of its prior merger with Bank of America, the sole surviving corporation. Having concluded that no standing exists, the dissent then reaches further by arguing that plaintiff's lack of standing is a nonwaivable defect because "when a plaintiff lacks standing to sue, the court lacks subject matter jurisdiction over the matter," citing *Lacks v Lacks* (41 NY2d 71, 74 [1976]). The dissent is mistaken on both counts. The dispute over plaintiff's status relates to legal capacity, not standing, and, in any event, both defenses are waived if not timely asserted.

The doctrine of standing is an element of the larger question of justiciability and is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 154-155 [1994]). The most critical requirement of standing, and the one arguably implicated in this case, is the presence of "injury in fact—an actual legal stake in the matter being adjudicated" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772 [1991]).

The similar but not identical doctrine of legal capacity, by contrast, concerns a litigant's power to appear and bring its grievance before the court (*Community Bd. 7*, 84 NY2d at 155). Legal capacity to sue, or lack thereof, often depends purely on the litigant's status, such as that of an infant, an adjudicated incompetent, a trustee, certain governmental entities or, as in this case, a business corporation.

In our view, defendant Evans's objection to plaintiff's status is properly understood as questioning legal capacity, not standing. Clearly, the basis of Evans's objection is plaintiff's *status* as a nonexistent corporation, whose identity ceased to exist upon its merger into the surviving corporation. Objections to the status of a corporate plaintiff have been interpreted by courts as being based on legal capacity to sue (*see Westside Fed. Sav. & Loan Assn. of N.Y. City v Fitzgerald*, 136 AD2d 699 [1988] [where absorbed corporation ceased to exist as an independent jural entity, it lacked capacity to commence lawsuit]). Conversely, Evans's challenge is not and could not be grounded in the assertion that plaintiff suffered no injury in fact, since plaintiff was unquestionably aggrieved by Evans's default on the mortgage. In fact, even though plaintiff ceased to exist after the merger, it is undisputed that it was designated as the mortgagee on the last recorded assignment of the mortgage. Because the determination of whether plaintiff is a proper party to sue in this case

depends primarily on its status as a nonexistent corporation, and not on a finding that it had not been aggrieved, we find that Evans's objection is one challenging legal capacity.

The record, however, demonstrates that Evans waived the defense of lack of capacity. The issue of lack of capacity does not implicate the jurisdiction of the court; it is merely a ground for dismissal if timely raised as a defense (CPLR 3211 [a] [3]; *City of New York v State of New York*, 86 NY2d 286, 292 [1995]). The statute is clear that the defense of lack of capacity must be raised in a pre-answer motion to dismiss or the answer, or else it will be waived (CPLR 3211 [e]). Here, despite the fact that the merger preceded the commencement of this action, Evans never moved to dismiss based on lack of capacity and never included such defense in her answer. Instead, she first raised the defense four years later in a related holdover proceeding commenced by plaintiff. Based on these undisputed facts, the defense was waived and she is barred from raising it in this action.

Even if, as the dissent contends, plaintiff's status should properly be viewed as raising an issue of standing, not legal capacity, we cannot agree with its additional conclusion that a lack of standing divests the court of subject matter jurisdiction over the action. "The question of subject matter jurisdiction is a question of judicial power: whether the court has the power, conferred by the Constitution or statute, to entertain the case before it" (*Matter of Fry*, 89 NY2d at 718). Because New York's Supreme Court "is a court of original, unlimited and unqualified jurisdiction" (*Kagen v Kagen*, 21 NY2d 532, 537 [1968]), it is competent to entertain all causes of action, including mortgage foreclosure actions (*Matter of Fry* at 718).

While it is true that subject matter jurisdiction may not come into being through waiver or estoppel (*Matter of Newham v Chile Exploration Co.*, 232 NY 37, 42 [1921]), that rule applies only where a court never had power to hear a particular type of proceeding in the first place, such as where a tribunal vested with civil jurisdiction attempts to convict a citizen of a crime (*Matter of Rougeron*, 17 NY2d 264, 271 [1966], *cert denied* 385 US 899 [1966]). In this case, the Supreme Court always had the power to hear the foreclosure action, including any issues regarding the defense of lack of capacity or standing and waiver, had those issues been timely raised.

In any event, the dissent is incorrect to argue that the defense of lack of standing may not be waived. The Court of Appeals and lower appellate courts of this state have consistently held that pursuant to CPLR 3211 (e), the failure to raise the defense

of lack of standing in a motion to dismiss or answer results in a waiver of such defense (*Dougherty v City of Rye*, 63 NY2d 989, 991 [1984]; *Matter of Prudco Realty Corp. v Palermo*, 60 NY2d 656, 657 [1983]; *Matter of Klein v Garfinkle*, 12 AD3d 604, 605 [2004]; *Gilman v Abagnale*, 235 AD2d 989, 990-991 [1997]). Based on this authority, Evans's failure to raise the issue of plaintiff's lack of standing until four years after the judgment of foreclosure was entered constitutes a waiver of that defense.

To the extent that plaintiff's motion for reargument included new material not presented on the original motion, without proper excuse, the motion court properly exercised its discretion to consider the additional submission (*see Mejia v Nanni*, 307 AD2d 870 [2003]). Concur—Sullivan, Williams and Gonzalez, JJ.

Mazzarelli, J.P., and Catterson, J., dissent in a memorandum by Catterson, J., as follows: The majority holding permits a fictitious entity to foreclose on realty. I believe that this is purely a question of the application of the common law, and thus the majority holding will be a most dangerous precedent. Therefore, I must dissent. The tortured history of this case is as follows: In October 1988, the defendant Tracie Evans obtained a loan from First Nationwide Bank, secured by a home mortgage on her co-op apartment. In 1989, this mortgage was assigned to the plaintiff, Security Pacific National Bank (hereinafter referred to as Security Pacific).

In 1992, Security Pacific was merged with Bank of America National Trust and Savings Association (hereinafter referred to as Bank of America) and ceased to exist as a separate entity.

In 1992, following this merger, defendant defaulted on her mortgage and the now defunct Security Pacific commenced foreclosure proceedings against her in Supreme Court, New York County. In an order dated July 21, 1994, the court granted Security Pacific's motion for summary judgment and entered a judgment of foreclosure and sale against defendant. Thereafter, defendant failed to vacate the premises and Security Pacific initiated holdover proceedings in Civil Court. On November 19, 1998, a stipulation of settlement was entered between the parties, with defendant agreeing to vacate the premises by April 19, 1999. Defendant then moved, by order to show cause, to vacate this stipulation of settlement, alleging that prior to the commencement of the proceeding Security Pacific was merged with Bank of America and therefore lacked standing to sue. In an order dated May 24, 1999, the court denied defendant's motion, finding there was no fraud or misrepresentation by Security Pacific and noting that defendant should have raised this defense in her answer.

On October 6, 1999, the defendant moved in Supreme Court, by order to show cause, to vacate the judgment of foreclosure and sale, again alleging that Security Pacific ceased to exist pursuant to the merger with Bank of America and therefore lacked standing to sue. In an order dated October 19, 2000, the court granted defendant's motion, finding Security Pacific was completely absorbed by Bank of America prior to the commencement of this action and therefore could not be named as a party in litigation.

Subsequently, Security Pacific moved to reargue, asserting there was no basis for the court to vacate the judgment of foreclosure and sale because Security Pacific and its successor, Bank of America, were one and the same entity. In an order dated June 7, 2002, the court granted Security Pacific's motion for reargument, and upon reargument, vacated its prior order and reinstated the judgment of foreclosure and sale. In vacating its prior decision, the court found that defendant was barred from raising the defense of lack of capacity to sue because, as defendant failed to plead such defense in her answer it was thus waived.

I disagree with my colleagues even though, given the lengthy delays in this case, I have no sympathy for the tenants. It is uncontested that Security Pacific had no legally cognizable existence at the time that it commenced the instant foreclosure. It is axiomatic that only an existing entity may bring a lawsuit. In *Westside Fed. Sav. & Loan Assn. of N.Y. City v Fitzgerald* (136 AD2d 699 [2d Dept 1988]), the Court held that an absorbed corporation, like the one in the instant case, lacked the capacity to commence a lawsuit. The Court did not use the term *legal* capacity as it is used in CPLR 3211 (a) (3) but rather it emphasized that the main reason for its decision was that the corporation had been completely absorbed by another banking institution, and had ceased to exist before the lawsuit, and therefore could not be a "party [to] litigation." (*Id.*) The Second Department's unequivocal ruling demonstrates that a corporation that ceases to exist may not be a party to litigation in any form or under any guise, such as through a trustee or guardian or administrator.

Thus, contrary to the majority view, I believe cessation of corporate existence goes to lack of standing for the defunct corporation rather than legal capacity. Lack of legal capacity asserted on a motion to dismiss pursuant to CPLR 3211 (a) (3) is generally used where a plaintiff may or may not initiate an action depending on the character or the guise under which he/she is suing. Indeed, the concept of legal incapacity is succinctly,

if somewhat anachronistically, explained in a case decided in 1898. In *Ward v Petrie* (157 NY 301 [1898]), the Court determined that an individual who was appointed receiver had legal capacity to sue even if he himself had no cause of action against defendants. The Court then distinguished the situation from incapacity to sue, which exists where certain persons have a cause of action but there is a legal disability such as infancy or lunacy. (*Id.* at 311-312, citing *Bank of Havana v Magee*, 20 NY 355, 359 [1859] ["infants, idiots, lunatics and married women, cannot sue except by guardians, next friends, committees, or in the case of married women, by joining their husbands in certain cases"].) A legal disability that implicates legal capacity to sue applies to individuals. Except for bankruptcy which is technically not a cessation of existence, and where a trustee for the corporation is appointed (*see e.g. Emergency Beacon Corp. v Polish*, 71 AD2d 995 [2d Dept 1979]), corporations simply cannot suffer from the sort of disabilities that would create in an individual an incapacity to sue. Thus, I contend that, contrary to the majority viewpoint, this dispute hinges only on standing. For the majority to frame the problem in terms of Security Pacific's "status as a nonexistent corporation" simply avoids analyzing Security Pacific's problem as a lack of standing.

I have no quarrel with the majority as to its view that standing means a plaintiff has suffered an injury in fact. (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772 [1991].) Only an aggrieved party has standing to bring a lawsuit. (*See Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 687 [1996]; Siegel, NY Prac § 136, at 223 [3d ed].) Furthermore, in order to have standing a party must be involved in some genuine controversy. (*Id.*) However, our views diverge when the majority contends that Security Pacific is unquestionably aggrieved and therefore has standing in this case. Quite simply, a party that does not exist cannot be aggrieved or become involved in a genuine controversy and therefore lacks standing to bring a lawsuit. (*See Sheldon v Kimberly-Clark Corp.*, 105 AD2d 273, 276 [2d Dept 1984], *appeal dismissed* 65 NY2d 691 [1985] [once a merger has been effected, the absorbed corporation immediately ceases to exist as a separate entity, and may no longer be named a party to litigation]; *see also Westside Fed. Sav. & Loan Assn. of N.Y. City v Fitzgerald, supra.*)

Furthermore, the defendant cannot waive her right to assert this defense because when a plaintiff lacks standing to sue, the court lacks subject matter jurisdiction over the matter. (*Lacks v Lacks*, 41 NY2d 71, 74 [1976] [questions of mootness and standing of parties characterized as raising questions of subject mat-

ter jurisdiction].) The majority's contention that the Court has jurisdiction because New York Supreme Court is of original, unlimited and unqualified jurisdiction is irrelevant to a resolution of the dispute. While it is true that New York Supreme Court has subject matter jurisdiction over foreclosure brought pursuant to the RPAPL, it is not competent to hear a suit brought by a nonexistent party, foreclosure or not, because there is no aggrieved party and thus no genuine controversy. The court has no subject matter jurisdiction where there is no genuine controversy.*

Finally, it is black letter law that lack of subject matter jurisdiction is not curable by waiver and may be objected to at any stage of the action. (*Lacks*, 41 NY2d at 75.) Hence, I believe the motion court erred in holding that the defendant was barred from raising the lack of standing defense.

* David D. Siegel explains it thus: Where a plaintiff is not involved in a genuine controversy, "a simple syllogism takes us from there to a 'jurisdictional' dismissal: (1) the courts have jurisdiction only over controversies; (2) a plaintiff found to lack 'standing' is not involved in a controversy; and (3) the courts therefore have no jurisdiction of the case when such a plaintiff purports to bring it." (NY Prac § 136, at 232 [4th ed].)