■ HSBC Guyerzeller Bank AG, Appellant-Respondent, v Chascona N.V. et al., Defendants, and CIBC Mellon Trust Company et al., Respondents-Appellants, et al., Defendant. Samuel Montagu & Co., Limited, Nonparty Respondent. [841 NYS2d 11]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered August 19, 2005, which denied the motion by defendants CIBC Mellon Trust and Daimler Chrysler to dismiss the

complaint and granted nonparty respondent Samuel Montagu Co.'s cross motion to substitute itself as plaintiff, affirmed, without costs.

The covenants requiring the borrower's consent to any assignment of the loan agreement and selecting the law of England as governing were unambiguously incorporated by reference into the note. Under the substantive law of England, defendant Mora Hotel was entitled to set aside the assignment of the note because Montagu neither sought nor obtained the consent of the receiver of the hotel defendants' New York assets, who had the exclusive right to give such consent (*see Linden Gardens Trust Ltd. v Lenesta Sludge Disposals Ltd.*, [1994] 1 AC 85, [1993] 3 All ER 417; *Hendry v Chartsearch Ltd.*, [1998] CLC 1382). The loan agreement set forth the terms of the loan, which were incorporated into the note, and was a commercial contract. Thus, policies against alienation of an estate in land are not implicated and the general rule of *Linden* governs. The parties made substantial submissions interpreting a foreign law and there was no improvident exercise of discretion in not holding a hearing (CPLR 4511 [d]).

Furthermore, under *Linden* and *Hendry*, the assignment was valid as between Montagu and plaintiff, but not as between Montagu and the debtor Mora. Once the assignment was invalidated by the receiver's objection, the note, as to Mora, reverted back to Montagu, and there was a transfer of interest (CPLR 1018). Since Montagu and plaintiff are affiliates in the HSBC family and were involved in the underlying transactions from the inception, and since the hotel defendants and receiver were aware of Montagu's and plaintiff's claims and roles and the foreclosure complaint details the mortgage history and the assignment, and since the relief Montagu seeks is the same as that sought by plaintiff, the substitution motion was properly granted in the exercise of the court's discretion (*see Johnson v State of New York*, 10 AD3d 596, 597 [2004]; *Fairbanks Capital Corp. v Nagel*, 289 AD2d 99, 100 [2001]; *Bellini v Gersalle Realty Corp.*, 120 AD2d 345, 347-348 [1986]).

We have considered the parties' remaining arguments for affirmative relief and find them unavailing. Concur—Andrias, J.P., Williams and Sweeny, JJ.

Sullivan and McGuire, JJ., concur in a separate memorandum by McGuire, J., as follows: I agree that Supreme Court correctly concluded that the note unambiguously incorporated the loan agreement, including the provision specifying that the agreement was governed by English law. I agree as well that, as Supreme Court stated in its written opinion, under English law

"Guyerzeller never received a proper assignment" and thus was without standing to maintain the foreclosure action. In my view, however, we should not decide the issue of whether the motion of Montagu as a nonparty to be substituted as plaintiff under CPLR 1018 properly was granted. The resolution of that issue appears to turn on whether the assignment entirely was ineffective or whether, once the receiver objected to the purported assignment, the note thereby reverted back to Montagu so that a "transfer of interest" within the meaning of CPLR 1018 occurred during the pendency of the foreclosure action. Apart from the question of whether that issue turns on subtleties of English law we are not in a position to decide, I note that CIBC Mellon Trust and Daimler Chrysler (collectively, Chrysler) argue with considerable force that even if the assignment was effective as between Guyerzeller and Montagu, neither the receiver's objection to the assignment nor Supreme Court's determination that "Guyerzeller never received a proper assignment" would be sufficient to cause the assignment to revert back automatically to Montagu.

Rather, I would construe Montagu's motion as a motion to intervene as plaintiff under CPLR 1013 (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983] [authority of Appellate Division is as broad as that of Supreme Court]; *see also* CPLR 2001; *Bennett Rd. Sewer Co. v Town Bd. of Town of Camillus*, 243 AD2d 61, 65 [1998]; *Technical Tape v Spray-Tuck, Inc.*, 146 AD2d 517, 518 [1989], *lv dismissed* 74 NY2d 791 [1989]). Even so construed, Montagu's motion would have to be denied if Chrysler were correct with respect to the first of the two central contentions it makes in connection with the invalidity of the assignment: Guyerzeller's resultant lack of standing renders the foreclosure action jurisdictionally defective so that Supreme Court was required to dismiss the action and was without power to issue any orders curing this defect retroactively.

Guyerzeller's lack of standing, however, did not deprive Supreme Court of subject matter jurisdiction. In *Security Pac. Natl. Bank v Evans* (31 AD3d 278 [2006]), the plaintiff bank had ceased to exist at the time it commenced a foreclosure action by virtue of having merged with another bank. Although this Court concluded that the plaintiff lacked capacity rather than standing, it rejected the dissent's contention that the action would have to be dismissed on jurisdictional grounds if the plaintiff lacked standing (*id.* at 279-280). As this Court stated: "Even if, as the dissent contends, plaintiff's status should properly be viewed as raising an issue of standing, not legal

capacity, we cannot agree with its additional conclusion that a lack of standing divests the court of subject matter jurisdiction over the action. 'The question of subject matter jurisdiction is a question of judicial power: whether the court has the power, conferred by the Constitution or statute, to entertain the case before it' (*Matter of Fry*, 89 NY2d at 718). Because New York's Supreme Court 'is a court of original, unlimited and unqualified jurisdiction' (*Kagen v Kagen*, 21 NY2d 532, 537 [1968]), it is competent to entertain all causes of action, including mortgage foreclosure actions (*Matter of Fry* at 718)" (*id.* at 280). What was true in *Security Pacific*, also is true here: "[i]n this case, the Supreme Court always had the power to hear the foreclosure action" (*id.*).

In *Gaines v City of New York* (215 NY 533 [1915]), the issue was the applicability of Code of Civil Procedure § 405, the predecessor to CPLR 205 (a), when an action was dismissed for lack of subject matter jurisdiction. Like CPLR 205 (a), section 405 provided that if an action that had been timely commenced thereafter was terminated " 'in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a· final judgment upon the merits' " (215 NY at 537, quoting Code Civ Pro § 405), a new action could be commenced within a prescribed time period following the action's termination despite the intervening expiration of the statute of limitations. Because the action had been dismissed for lack of subject matter jurisdiction, the Appellate Division concluded that section 405 did not apply so as to permit a new action to be commenced, the earlier action having been regarded as "a nullity for all purposes" (*id.*). In an opinion by Judge Cardozo, the Court rejected that view. After stating that the "broad and liberal purpose [of section 405] is not to be frittered away by any narrow construction" (*id.* at 539), the Court went to observe that "[t]here is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights" (*id.* at 540). Although *Gaines* is not controlling here, it undermines Chrysler's reliance on the assertedly jurisdictional nature of Guyerzeller's lack of standing.

Chrysler's position, moreover, is at odds with numerous other decisions of this Court. In *Schleidt v Stamler* (106 AD2d 264 [1984]), this Court upheld the dismissal of a complaint on the ground that "[t]he plaintiff, as an individual shareholder, ha[d] no right to bring an action in his own name for a wrong committed against the corporation" (*id.* at 265). Nonetheless, this

Court sua sponte ordered the joinder of the corporation as a party plaintiff pursuant to CPLR 1003 (*id.*). In *American Home Assur. Co. v Scanlon* (164 AD2d 751 [1990]), an action for fraud against the principal of an insured and the recipients of policy payments was brought by the wrong insurer, an insurance company affiliated with the company that had issued the policy and had made the payments under the policy. Despite the plaintiff's lack of standing, this Court affirmed the order of Supreme Court denying the defendants' motion to dismiss for lack of standing and granting the plaintiff's motion to substitute the affiliate insurer as plaintiff (*id.* at 751-752; *see also Johnson v State of New York*, 10 AD3d 596, 597 [2004] [affirming substitution, on defendant's motion, of individual property owners as plaintiffs where partnership that had commenced the action "did not have title to the subject realty, and thus lacked standing to litigate the claim"]).

*Stock v Mann* (255 NY 100 [1930]) is not to the contrary. To be sure, as the Court stated, "[a]n order may not be made *nunc pro tunc* which will supply a jurisdictional defect by requiring something to be done which has not been done" (*id.* at 103). Here, however, as discussed above, Guyerzeller's lack of standing does not present a jurisdictional defect. The jurisdictional defect in *Stock v Mann* was the failure to serve either an incompetent person, one Edith Kimball, or the committee that had been appointed to represent her only after entry of a judgment of sale affecting her property rights. Accordingly, the court "never obtained jurisdiction over Edith Kimball" (*id.* at 104).[1]

On the other hand, Chrysler is correct that *National Fin. Co. v Uh* (279 AD2d 374 [2001]) supports its position. There, Empire State Bank brought suit on a note executed in its favor by the defendant. Prior to the commencement of the action, however, Empire had been declared insolvent, a receiver had been appointed and the note had been assigned, apparently by the receiver, to another entity, National Financial. Reversing Supreme Court, this Court denied Empire's motion to amend the complaint to substitute National Financial as plaintiff and granted the defendant's cross motion for summary judgment dismissing the complaint. With respect to the cross motion, this Court held that dismissal was required due to Empire's lack of

---

1. Another decision Chrysler cites, *Gold v City of New York* (80 AD2d 138 [1981]), also is distinguishable. In addition to similarly involving a "jurisdictional void" (*id.* at 142) due to the plaintiff's failure to serve a summons and complaint on the proper party, the Board of Education, *Gold* also entailed a failure to serve a notice of claim, a statutory prerequisite to the maintenance of a tort action against the Board of Education (*id.* at 140).

standing. As for the motion to substitute, this Court stated that the designation of Empire had not been "a mere oversight," and without explanation held that "[i]n any event, the failure to name the real party in interest cannot be remedied by resort to the expedient of substitution" (*id.* at 375 [citations omitted]).

The two decisions cited in *National Financial* in support of this latter holding, *Matter of C & M Plastics (Collins)* (168 AD2d 160 [1991]) and *Pinto v Ancona* (262 AD2d 472 [1999]), are discussed below. Neither decision, however, elucidates the rationale for the holding in *National Financial.* To the extent that holding may be premised on the notion that the lack of capacity or standing deprived the court of subject matter jurisdiction so as to preclude the court from entertaining and acting upon the substitution motion, it would be inconsistent with *Security Pacific (supra)*, as well with *Schleidt (supra)*, *American Home (supra)*, and *Johnson (supra)*.

Moreover, *National Financial* is also inconsistent with this Court's decision in *Fairbanks Capital Corp. v Nagel* (289 AD2d 99 [2001]). Indeed, *Fairbanks* is inconsistent with Chrysler's other key contention: the relation-back doctrine is available only to a preexisting party to the original action and not to a nonparty to the original action seeking to interpose a claim after the statute of limitations has expired. In *Fairbanks*, this Court rejected the defendant's argument that the plaintiff bank lacked standing to maintain the foreclosure action when it was commenced and that the action therefore was time-barred when another entity, Fairbanks, was substituted as plaintiff after the expiration of the statute of limitations. Although this Court held that the original plaintiff did have standing to bring the foreclosure action, it concluded that it did not matter whether the original plaintiff lacked standing at the inception of the litigation. Even in that event, "the substitution of Fairbanks, the subsequent assignee of the mortgage, relates back to the original commencement of the action . . . for purposes of the Statute of Limitations" (*id.* at 100).

Not only *Fairbanks*, but *Schleidt (supra)* and *American Home (supra)* are inconsistent with Chrysler's contention that the relation-back doctrine is not available to a nonparty to the original action seeking to assert a claim after the expiration of the statute of limitations. In *American Home*, this Court held that the substituted plaintiff's claims were not time-barred because "the original pleading gave notice 'of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading' (CPLR 203 [e] [current (f)])," the original and substituted plaintiffs were "interrelated

companies" and the defendants were not prejudiced by the substitution (164 AD2d at 752). Similarly, in *Schleidt,* the statute of limitations was "not a time bar to the assertion by the corporation of the malpractice claims pursuant to the joinder" ordered by this Court (106 AD2d at 266). As this Court explained, "[t]his court has been very liberal in allowing the addition or substitution of new parties, even after the Statute of Limitations has run, where the cause of action remains unchanged" (*id.* [internal quotation marks and citations omitted]).

Of course, that liberality has its limits. As Justice Bracken stated for the Second Department in *Key Intl. Mfg. v Morse/ Diesel, Inc.* (142 AD2d 448 [1988]), "the rule permitting the claim of a newly joined plaintiff to relate back to the earlier claim of a preexisting plaintiff does not necessarily extend beyond those situations . . . where the substance of the claims of the newly joined plaintiff and those of [the] existing plaintiff are virtually identical, where the ad damnum clause is thus the same in the proposed amended complaint as in the original complaint, and where the newly joined plaintiff is closely related to the original plaintiff" (*id.* at 458-459; *see also Bellini v Gersalle Realty Corp.,* 120 AD2d 345, 347-348 [1986] ["It is well settled that amendment of a pleading to assert a new cause of action, even one which technically belongs to different persons, or to substitute new parties, related to the original parties, is not precluded because an independent, de novo action would be time barred. The amendment may relate back to the earlier pleading so long as the earlier pleading gave the adverse party sufficient notice of the transaction out of which the new claim arises"]). Here, the relation-back doctrine applies because the foreclosure claim asserted by Montagu is identical in all respects to the foreclosure claim asserted by Guyerzeller, the potential liability of the defendants in the foreclosure action is the same regardless of which entity is the plaintiff and the two entities are affiliated as members of the HSBC Group (*cf. Insurance Co. of N. Am. v Hellmer,* 212 AD2d 665, 665-666 [1995] [reversing and denying motion to add as additional plaintiff the subrogor of moving plaintiff where subrogor sought "to increase the ad damnum clause by more than $300,000 to reflect an otherwise time-barred claim for uninsured fire losses suffered by (subrogor)"]).

Chrysler unpersuasively argues that even if the relation-back doctrine is available to a nonparty to the original action, Montagu still could not benefit from the doctrine. In *Buran v Coupal* (87 NY2d 173, 181 [1995]), the Court of Appeals stated

that "[w]hen a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired" (citation omitted). Quoting this statement from *Buran* and citing numerous other decisions addressing the issue of whether a plaintiff's initial failure to sue a party reflected a mistake concerning the proper parties or a conscious strategy decision (*see e.g. A to Z Assoc. v Cooper*, 215 AD2d 161, 162 [1995]), Chrysler argues that for the relation-back doctrine to apply here, Montagu would have to show that it made an analogous mistake—about the identity of the proper plaintiff—not an intentional strategic choice.

No binding authority requires Montagu to make such a showing. Although a mistake about the identity of the proper party-defendant to sue is essential when a plaintiff seeks to assert a claim against a new defendant that otherwise would be barred by the statute of limitations, it hardly follows that a showing of some comparable mistake is necessary before a new plaintiff can be added to an otherwise timely action against the proper party-defendant. Such a requirement certainly would not bear on "what the United States Supreme Court has called the 'linchpin' of the relation back doctrine—notice to the defendant within the applicable limitations period" (*Buran*, 87 NY2d at 180, quoting *Schiavone v Fortune*, 477 US 21, 31 [1986]). In any event, we need not decide whether a mistake about the proper party-plaintiff is essential under these circumstances. Whatever the extent of the strategic or business concerns that informed Montagu's decision that its affiliate should bring the foreclosure action, a mistake of law concerning the effectiveness of the assignment unquestionably played a decisive role in that decision.[2]

Chrysler's other arguments require only brief discussion. With respect to its jurisdictional contention, Chrysler's reliance on *Reynolds v Blue Cross of Northeastern N.Y.* (210 AD2d 619 [1994]) and the two decisions cited in *National Financial (supra)—Matter of C & M Plastics (supra)* and *Pinto (supra)*—is misplaced. As Montagu points out, in each of these cases the plaintiff had filed for bankruptcy and was asserting a cause of

---

2. Of the decisions Chrysler relies upon in this regard, only *15 E. 11th Apt. Corp. v Elghanayan* (232 AD2d 289 [1996], *lv denied* 89 NY2d 811 [1997]) involves the addition of a new plaintiff. Although this Court noted that "[t]he initial omission" of the would-be plaintiffs "was the result of a conscious strategic decision," the decision turned on the finding that the would-be plaintiffs were not united in interest with the original plaintiffs (232 AD2d at 290).

action that belonged to the bankruptcy trustee. Because each plaintiff lacked capacity to sue, the Appellate Division held in each case that the bankruptcy trustee should not have been substituted as the plaintiff and the complaint should have been dismissed. To be sure, as Chrysler responds, Montagu fails to explain why the holding of these cases should be confined to their particular facts, i.e., to cases involving this particular lack of capacity to sue arising out of bankruptcy law. For its part, however, Chrysler fails to explain why the holding of these cases should be applied outside of this bankruptcy context or why the holding of the factually more similar line of cases that includes *Schleidt (supra)*, *American Home (supra)* and *Fairbanks Capital (supra)*, should not be followed here. We need not—and therefore should not—decide whether *Reynolds, Matter of C & M Plastics, Pinto* and, for that matter, *National Financial*, were correctly decided. It is enough to decide that we should follow the holdings of the factually more similar line of cases, holdings that are also consistent with this Court's recent conclusion in *Security Pacific (supra)*, that neither a lack of standing nor a lack of capacity to sue deprives the court of subject matter jurisdiction.

Finally, Chrysler relies on the statement in *George v Mt. Sinai Hosp.* (47 NY2d 170, 179 [1979]) that "a necessary element of any attempt to utilize the 'relation-back' provisions of [CPLR 203] is the existence of a valid pre-existing action to which the amendment can relate back" (*see also id.* at 179-180 ["the relation-back provisions of CPLR 203 are dependent on the existence of a valid pre-existing action"]; *Carrick v Central Gen. Hosp.*, 51 NY2d 242, 248-249 [1980]). Accordingly, Chrysler argues that the relation-back provisions of CPLR 203 (f) cannot apply here because, given Guyerzeller's lack of standing, there is no "valid pre-existing action" to which an amended pleading could relate back.[3] Although the Court of Appeals has not clarified what a "valid pre-existing action" entails in this particular context, one need not look beyond the Court's decision in *George* itself to find reason to think that a preexisting action in which the plaintiff lacks standing is such a "valid" action. After all, the Court of Appeals stated in *George* that although dismissal is the "appropriate response" to an action "brought in the name of the wrong party," such an action "is no more a 'nullity' than

---

3. Chrysler also urges the nonapplicability of CPLR 203 (f) for another reason. By its express terms the statute applies to a "claim asserted in an amended pleading." And here, Chrysler maintains, there was no such amended pleading. The flaw in this argument, however, is that Montagu's motion to substitute itself as plaintiff is essentially a motion to amend the complaint.

are actions . . . dismissed for lack of jurisdiction or for nonjoinder, and yet the latter are traditionally deemed to be prior actions for purposes of CPLR 205 (subd [a])" (*George*, 47 NY2d at 177 [citations omitted]). Thus, if Chrysler is correct, a curious conclusion would follow: Guyerzeller brought a foreclosure action which was not a "nullity" but yet was not a "valid" action. It also would follow that *Schleidt* (*supra*), *American Home* (*supra*) and *Fairbanks Capital* (*supra*) were wrongly decided. In the absence of a persuasive reason to conclude that an action in which the plaintiff lacks standing is not a "valid pre-existing action," we should continue to adhere to this line of cases.