■ SECURITY PACIFIC NATIONAL BANK, Respondent, v TRACIE EVANS, Appellant. [878 NYS2d 732]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered on or about January 14, 2008, which, in this mortgage foreclosure action, granted plaintiff Citimortgage's motion to vacate and cancel a prior order of the same court, (Sherry Klein-Heitler, J.), entered on or about February 27, 2007, and to reinstate a prior order of the same court, (Sherry Klein-Heitler, J.), entered July 7, 2002, inter alia, reinstating a referee's deed of sale, and denied defendant's cross motion to hold plaintiff liable for its purported breach of the settlement

agreement between the parties and to specifically perform its terms by removing or correcting certain allegedly incorrect information contained in defendant's credit report, unanimously modified, on the law, Citimortgage's motion denied, and otherwise affirmed, without costs.

In 1994, Security Pacific National Bank obtained a judgment of foreclosure and sale against defendant, the mortgagor of a condominium apartment. In 1995, Security Pacific was granted the referee's deed of sale, and in 1997, it obtained a warrant of eviction and a judgment of possession. Due to bank mergers and the sale and assignment of the mortgage, in 2003 Citimortgage became the servicer on behalf of Banker's Trust Company of California, N.A., as trustee, with respect to the subject mortgage.

Following extensive litigation (*see* 31 AD3d 278 [2006], *appeal dismissed* 8 NY3d 837 [2007]), on January 31, 2007, the parties entered into a settlement agreement providing, inter alia, that defendant would remit the sum of $880,000 to Citimortgage within 60 days, which was later extended to April 13, 2007 by consent of the parties. To effectuate the settlement, Citimortgage agreed to execute any and all documents necessary to vacate and cancel the referee's deed of sale, which would result in title reverting to defendant. The parties further agreed to execute any and all documents necessary to effectuate the terms of the settlement agreement.

After signing the settlement agreement, defendant sought to refinance her condominium apartment to obtain the monies necessary to pay the settlement funds. On or about February 22, 2007, a senior loan officer with a mortgage banker supplied a letter to the court stating that his company was prepared to give defendant a loan of $880,000 to refinance the premises, and could proceed as soon as the deed reverted back to defendant. On or about February 27, 2007, Justice Klein-Heitler vacated the referee's deed, thereby reverting the deed back to defendant, on the condition that defendant remit the settlement funds.

Because defendant allegedly had sufficient equity in the apartment and an excellent credit score, she believed that she would be able to obtain refinancing. However, Citimortgage had incorrectly listed on defendant's credit report that she had made late payments on 45 occasions, with each occasion listed as being four to six months late, and that she was in arrears of $65,000. At the request of defendant's counsel, Citimortgage's counsel provided two letters, the first stating that defendant's debt "has not been in default and there are no outstanding late fees and/or charges owed hereon from such date," and the second stating

that "no payments to CitiMortgage were due nor have any late charges or arrears been assessed." However, when the independent credit bureau attempted to verify that information, as required by the prospective lender, Citimortgage's counsel allegedly would not do so, nor would he provide the phone number of the appropriate person at Citimortgage to contact. Defendant then attempted to obtain a loan from several other banks, but was allegedly informed that a loan could not be issued due to the inaccurate credit report, and ultimately, she was unable to obtain a loan in time to remit the settlement funds by the April 13, 2007 deadline. After that date, defendant was able to arrange for a "hard money" loan at a high rate of interest that would be available upon provision by Citimortgage of a payoff letter.

Under the circumstances presented, we find that the motion court improperly granted Citimortgage's motion. It is well settled that all contracts imply a covenant of good faith and fair dealing in the course of performance, and "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995], quoting *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87 [1933]; *see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]).

Here, the record presents triable issues of fact as to whether Citimortgage breached the implied covenant of good faith by failing to confirm that its letters, rather than the credit report, gave an accurate account of defendant's payment history, and whether the erroneous credit report was the cause of defendant's inability to perform her obligations under the settlement agreement (*see Wallace v Merrill Lynch Capital Servs., Inc.*, 29 AD3d 382, 383 [2006]). If Citimortgage indeed refused to confirm the veracity of the information contained in the letters, its action could well have had the "effect of destroying . . . the right of [defendant] to receive the fruits of the contract" (*see 511 W. 232nd Owners Corp.*, 98 NY2d at 153). The contractual duty that the parties execute any and all necessary documents would be meaningless if the parties were not obligated to stand behind such documents as well. Furthermore, the requirement that Citimortgage confirm that its letters were authentic certainly would not, as a matter of law, negate any explicit contractual right (*cf. Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 302 [2003]). Concur—Mazzarelli, J.P., Saxe, Nardelli, Renwick and Freedman, JJ. [*See* 18 Misc 3d 1123(A), 2008 NY Slip Op 50189(U).]