OPINION OF THE COURT
Bernard J. Fried, J.
Defendant GMAC Mortgage, LLC moves, pursuant to CPLR 3211 (a) (7), to dismiss counts I (fraud) and II (negligent misrepresentation) of the complaint arguing, inter alia, that these counts are insufficient because MBIA Insurance Corporation is a sophisticated monoline insurer, thereby obligating MBIA to perform due diligence with the mortgage information. GMAC also moves to dismiss count VI (breach of contract — good faith and fair dealing) of the complaint arguing that the breach of the covenant of good faith and fair dealing claim is duplicative of the breach of contract claims in counts III to V
As alleged in the complaint, defendant GMAC originates and sells residential mortgage loans through residential mortgage-backed securities (RMBS) transactions. In these transactions, *858 GMAC transfers mortgage loans to pools, which, in turn, are then sold to investors. Investors receive distributions based primarily on the aggregate principal and interest cash flows from the mortgage loans included in the securitizations. MBIA and GMAC have worked together on at least eight securitization deals since 1999. Beginning in 2004, MBIA entered into three financial guaranty insurance agreements (the Insurance Agreements) with GMAC to cover RMBS transactions made in 2004, 2006, and 2007, which had 95,615 loans in the pool, and which had a total aggregate balance of $4,399 billion. (Complaint 11 43.) The 2004 and 2006 transactions specifically covered pools of mostly second-lien home equity lines of credit (HELOC), whereas the 2007 transaction covered closed-end mortgages (complaint 1Í 40). Under the Insurance Agreements, GMAC was permitted to populate the mortgage pools for a three-month period immediately after closing. (Complaint U 41.)
Prior to entering these Insurance Agreements, MBIA purportedly required GMAC to provide it with evidence of a satisfactory credit rating of the RMBS including: the rating from Moody’s; loan tapes detailing attributes of the individual borrowers and loans; schedules that set forth the statistics about the loan pool; registered initial and final prospectus supplements summarizing GMAC’s underwriting guidelines and origination criteria; and shadow ratings for each loan pool. (Complaint H 47.) GMAC complied with these demands by sending MBIA the requested information and also provided MBIA with prospectus supplements that would be filed with the Securities and Exchange Commission (SEC), which included specific representations describing GMAC’s underwriting standards. (Complaint H 49.) These guidelines specifically set forth that in order to obtain a loan from GMAC, there must be full documentation of the borrower’s financial information including: tax returns, pay stubs, a W-2, and a credit report. (Complaint 11 50.)
MBIA alleges that GMAC made various warranties and representations in the Insurance Agreements, of which two are relevant to this motion. First, GMAC represented that all of the representations and warranties in each of the transaction documents were “true and correct in all material aspects,” which included proper documentation and accurate loan information. (Agreement § 2.01 [j].) Second, GMAC represented and warranted that it would comply with the underwriting standards that GMAC reported to the SEC, and that the borrowers’ debt to income (DTI) ratio would not be in excess of 45%. In the *859 event of default, which would occur if a breach of any representation or warranty occurs, GMAC also agreed to pay and indemnify MBIA for any losses and liabilities arising out of the breach of warranty and representation. (Agreement § 2.01 [m].)
According to the complaint, in January 2009, MBIA became concerned about the high number of delinquencies that occurred with these loans and requested that GMAC provide it with access to the mortgage loan documents. MBIA alleges that GMAC did not allow MBIA access to all of the loan documents, but only permitted MBIA to review loan files for 4,104 delinquent loans. Upon reviewing the files for these delinquent loans, MBIA determined that GMAC routinely did not follow its own underwriting standards by approving loans and HELOCs to unqualified applicants. (Complaint 1f 78.) Because GMAC purportedly breached its warranties and representations, MBIA demanded that GMAC repurchase these loans and provide adequate substitutes pursuant to the repurchase obligation. GMAC has allegedly repurchased only 28 of the 3,669 noncompliant loans and, as a result, MBIA claims that it has borne most of the risk from these transactions, paying out approximately $132 million in claims.
MBIA alleges in count I (fraud) that GMAC fraudulently induced MBIA into these Insurance Agreements by intentionally misrepresenting the true nature of the borrowers’ Fair Isaac Corporation (FICO) scores, and DTI and combined loan to value (CLTV) ratios. Furthermore, MBIA alleges that GMAC fraudulently obtained higher shadow ratings and that MBIA had access only to the false information, thereby justifying its reliance on GMAC’s representations. Instead, MBIA asserts that GMAC provided it with false information on the loan tapes and consistently approved loans that did not comply with GMAC’s underwriting standards. (Complaint 1Í108.) Likewise, MBIA asserts that such misrepresentations were material to MBIA’s decision to enter into the Insurance Agreements and it would not have entered the Agreements knowing that information on the loan tapes was false. (Complaint If 106.)
MBIA also alleges in count II (negligent misrepresentation) that GMAC should be held liable for negligent misrepresentation because MBIA asserts that it had a “special relationship of trust and confidence” with GMAC, thereby creating a duty on the part of GMAC to report and correct any discrepancies with the loans. (Complaint 1I1Í 113, 115.) Specifically, MBIA alleges that it had a business relationship with GMAC since 1999, and *860 that MBIA provided insurance for eight previous GMACsponsored securitizations of second-lien mortgage loans. Furthermore, MBIA asserts that GMAC, as the sole originator of these loans, had sole access to individual loan files and thereby had “unique knowledge and expertise about the manner in which the loans had been originated.” (Complaint If 116.) Specifically, MBIA contends that GMAC had “unique and special knowledge . . . regarding both the underwriting of the mortgages generally, and the underwriting of the mortgage loans in the loan pools for the Transactions.” (Complaint If 116.) MBIA asserts that GMAC should have known that MBIA would rely on GMAC’s representations and that these representations would be material to MBIA’s decision to issue the policies. MBIA contends that had it known about these negligent misrepresentations, it would not have issued the policies.
In addition, MBIA alleges in counts III to V that GMAC breached its representations and warranties in the Insurance Agreements, as well as those made in the Servicing Agreement. MBIA maintains that GMAC violated section 2.01 (j) of the Insurance Agreements, asserting that GMAC breached this provision by not adhering to its own underwriting standards and by providing MBIA with misleading information in the loan tapes, schedules, and prospectus statements. Specifically, these documents allegedly provided artificially inflated shadow ratings and false statistics relating to DTI and CLTV ratios. Likewise, GMAC allegedly failed to repurchase the defective loans upon default, and also failed to service the delinquent loans.
In addition to the breach of contract claims, MBIA alleges in count VI (breach of contract — good faith and fair dealing) that GMAC breached the implied covenant of good faith and fair dealing. MBIA asserts that it entered into the Insurance Agreements with the understanding that the loan documents were evaluated consistently with the underwriting standards of GMAC. (Complaint 1Í1Í155-156, 160.) MBIA argues that GMAC breached the duty of good faith and fair dealing by knowingly, deliberately, and routinely contributing mortgage loans to the pools that had not been originated in accordance with GMAC’s underwriting standards. MBIA also asserts that GMAC breached the duty of good faith by failing to make any reasonable effort to collect payments due from borrowers. (Complaint 1T1Í 157-159.) Furthermore, it is alleged that GMAC breached this duty by failing to provide MBIA with access to information that it requested, such as a complete version of GMAC’s underwriting standards.
*861 In support of its motion for partial dismissal of the complaint, GMAC contends that all of MBIA’s claims, other than the breach of contract claims, should be dismissed as a matter of law for failure to state a cause of action. GMAC maintains that MBIA is a sophisticated monoline insurer and therefore had a duty to inspect the individual loans. Because MBIA is a sophisticated entity, it could not reasonably rely on GMAC’s purported misrepresentations, nor could it claim that it was in a special relationship with GMAC.
CPLR 3211 (a) (7) allows a party to move for dismissal of certain claims if they do not “state a cause of action.” The “court’s attention should be focused on whether the plaintiff has a cause of action rather than on whether he has properly stated one.” (R.H. Sanbar Projects v Gruzen Partnership, 148 AD2d 316, 318 [1st Dept 1989]; see Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 570 [2005].) Furthermore, the court must ascertain whether the complaint “manifests] any cause of action cognizable at law.” (Davis v CCF Capital Corp., 277 AD2d 342, 343 [2d Dept 2000].) Thus, if the complaint successfully states a claim, then the motion to dismiss should be denied.
Turning to count I (fraud), the sole basis for GMAC’s motion for dismissal of the fraud claim is that MBIA could not justifiably rely on any of the purported misrepresentations. (Defendant’s mem of law at 9-17.) A fraud cause of action has five elements: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff (5) that causes damage to the plaintiff. (See New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78, 85 [1st Dept 2000].) “[A] plaintiff . . . need only plead that he relied on misrepresentations made by the defendant.” (Knight Sec. v Fiduciary Trust Co., 5 AD3d 172, 173 [1st Dept 2004].) Reasonable reliance is a fact-intensive inquiry, which should be reserved for a trier of fact. (See Bank Hapoalim [Switzerland] Ltd. v Banca Intesa S.p.A., 22 Misc 3d 1104[A], 2008 NY Slip Op 52596[U], *4 [Sup Ct, NY County 2008] [“(W)hether justifiable reliance exists presents an issue of fact”; “A party may be found to have reasonably relied on another party’s written representations, if the documents would not, on their face, have alerted the party to potential fraud”]; JP Morgan Chase Bank v Winnick, 350 F Supp 2d 393, 409 [SD NY 2004] [“(I)t cannot be argued that the Banks failed to bargain for adequate safeguards to establish, at least initially, the basis for their reliance on the defendants’ representations”].)
*862 The Court of Appeals has recently held that, during the pleading stage, the reasonable reliance element can be inferred “[w]here ... a plaintiff has taken reasonable steps to protect itself against deception,” such as “specific, written representation[s].” (DDJ Mgt., LLC v Rhone Group L.L.C., 15 NY3d 147, 154 [2010].) The Court of Appeals stated that “[t]he question of what constitutes reasonable reliance is . . . fact-intensive.” (DDJ Mgt., 15 NY3d at 155 [emphasis added].) The financial statements at issue contained some details that might have provoked concern with a more thorough examination, but at the plaintiffs’ insistence, the defendant represented and warranted in the loan agreement that the financial statements were accurate. (DDJ Mgt., 15 NY3d at 152.) A plaintiff “should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred.” (DDJ Mgt., 15 NY3d at 154.) Even though the plaintiffs were sophisticated entities, the Court held that they did not have to do more than obtain these representations and warranties to state a sufficient claim for fraud and declined to grant the defendant’s motion to dismiss because the issue of reasonable reliance is an issue of fact. (DDJ Mgt., 15 NY3d at 155.)
Here, MBIA alleges in its complaint that “GMAC knew that the industry practice was for a financial guaranty insurer to rely upon the representations and warranties of the sponsor regarding the quality of the mortgage loans and the standards under which they were originated.” (Complaint H 104.) Without representing and warranting the accuracy of the loan information and credit scores, MBIA allegedly would not have entered into the Insurance Agreements. (Complaint 1i 106.) Thus, much like in DDJ Management, MBIA has pleaded that it relied on specific written representations as to the accuracy of the loan information and credit ratings. Whether MBIA was justified in relying on these representations and warranties, however, is a question of fact. (DDJ Mgt., 15 NY3d at 155.)
However, assuming that DDJ Management is not dispositive, it is not clear whether MBIA could have discovered the alleged misrepresentations concerning the loan characteristics before entering into the Insurance Agreements. (See Harbinger Capital Partners Master Fund I, Ltd. v Wachovia Capital Mkts., LLC, 27 Misc 3d 1236[A], 2010 NY Slip Op 51046[U], *7 [Sup Ct, NY County, May 10, 2010, Kapnick, J.].) In MBIA Ins. Co. v Countrywide Home Loans, Inc., Justice Bransten dismissed a similar motion to dismiss that was predicated on failure to *863 perform due diligence because she noted that “[e]ven assuming MBIA conducted a full inquiry under the circumstances ... it is not conclusive that MBIA could have discovered the alleged fraud. ”(MBIA Ins. Co. v Countrywide Home Loans, Inc., Sup Ct, NY County, Apr. 7, 2010, Bransten, J., index No. 602825/08, slip op at 12.) It is inappropriate as a matter of law during the pleadings stage to determine whether “plaintiff was not justified in relying on [defendant’s] misrepresentations.” (P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 378 [1st Dept 2003].)
Here, GMAC asserts that MBIA had an affirmative duty to conduct an investigation before the closing and that failure to do so should foreclose MBIA’s ability to claim justifiable reliance. (Defendant’s mem of law at 11.) However, the Agreements purportedly provided that GMAC could populate the mortgage pools with additional loans for three months after the closing date. (Complaint 11 41.) According to the complaint, many of these mortgage pools were not fully populated at the time of the closing. (Complaint 1i 41.) Much like in Countrywide, it is possible that an investigation into the loan files would have been futile, as faulty loans could be added to the mortgage pools after an investigation. (Complaint IT 41.) Accordingly, the fraud cause of action survives, and GMAC’s request to dismiss the fraud claim is denied.
Turning to count II (negligent misrepresentation), a negligent misrepresentation cause of action requires a party to plead facts showing a special relationship of trust and confidence between the parties, which created a duty on the part of one party to impart correct information. (J.A.O. Acquisition Corp. v Stavitsky, 8 NY3d 144, 148 [2007].) A special relationship exists when (1) the parties are in a relationship of trust and confidence, or (2) one of the parties has superior knowledge. (See Kimmell v Schaefer, 89 NY2d 257, 263 [1996].) Generally, the requisite “special relationship” does not exist between sophisticated commercial entities that enter into an agreement through an arm’s length business transaction. (Parisi v Metroflag Polo, LLC, 51 AD3d 424 [1st Dept 2008].)
The basis of MBIA’s argument for a special relationship of trust is that MBIA and GMAC previously had engaged in eight similar securitization deals since 1999. According to the complaint, the previous securitization transactions similarly dealt with closed-end and HELOC second-lien mortgages. (Complaint U 113.) Noting these previous transactions with GMAC, *864 MBIA asserts that it had a “special relationship of trust and confidence” with GMAC, thereby creating a duty on the part of GMAC to report and correct any discrepancies with the loans. (Complaint 111Í 113, 115.) However, the number of years or transactions undertaken by two business entities does not create a relationship of trust. (See e.g. Sheridan v Trustees of Columbia Univ. in City of N.Y., 296 AD2d 314, 316 [1st Dept 2002]; Huntington Dental & Med. Co., Inc. v Minnesota Min. & Mfg. Co., Inc., 1996 WL 520904, *4, 1996 US Dist LEXIS 13350, *10-11 [SD NY, Sept. 12, 1996] [holding that a 15-year course of dealing between the parties did not create a special relationship].) Here, even though the parties engaged in eight similar securitization transactions over the course of six years, the companies were not in a relationship of trust and confidence becáuse both were sophisticated commercial entities that entered into the Insurance Agreements at arm’s length.
However, a special relationship may also exist when one party has specialized knowledge, thereby justifying reliance on the knowledgeable party. In Kimmell v Schaefer, the Court of Appeals recognized that a duty to speak with care may be imposed in a commercial transaction, but only “on those persons who possess unique or specialized expertise . . . such that reliance on the negligent misrepresentation is justified.” (89 NY2d 257, 263 [1996].) On the other hand, courts have not found specialized knowledge where the alleged area of expertise involves the particulars of the defendant’s business. (See Batas v Prudential Ins. Co. of Am., 281 AD2d 260, 264 [1st Dept 2001] [holding that “defendants’ superior knowledge of their product” created no special relationship between an insurance company and its customers].) A company’s “knowledge of the particulars of its own business is not the type of unique or specialized knowledge that the Court of Appeals was talking about in Kimmel[l].” (MBIA Ins. Co. v Residential Funding Co., LLC, 26 Misc 3d 1204[A], 2009 NY Slip Op 52662[U], *6 [Sup Ct, NY County, Dec. 22, 2009].)
MBIA contends that GMAC had “superior information regarding each of the mortgage loans by virtue of possessing the loan origination and servicing files,” while MBIA only had access to the loan tapes. (Plaintiff’s mem of law at 18.) Thus, GMAC allegedly had superior knowledge of its own underwriting standards and the credit qualities of the mortgage loans, such as the DTI and CLTV ratios and FICO scores. However, the loan information in the origination files and the underwrit *865 ing standards, both of which serve as the basis of MBIA’s specialized knowledge argument, are the particulars of GMAC’s mortgage lending business. Mere possession of the loan files and servicing files does not create the type of specialized knowledge discussed in Kimmell. The knowledge of the information in the loan files is not specialized knowledge because the details of those loan files constitute the particulars of GMAC’s business. Accordingly, a special relationship did not exist and the motion to dismiss count II is granted.
Finally, GMAC moves to dismiss MBIA’s good faith and fair dealing claim because it is duplicative of the breach of contract claims. All contracts in New York imply a covenant of good faith and fair dealing in the course of performance. (See 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; Security Pac. Natl. Bank v Evans, 62 AD3d 512, 514 [1st Dept 2009].) “This embraces a pledge that ‘neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits óf the contract.’ ” (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995], quoting Kirke La Shelle Co. v Armstrong Co., 263 NY 79, 87 [1933].)
A breach of the implied covenant of good faith and fair dealing claim that is duplicative of a breach of contract claim must be dismissed. (See New York Univ. v Continental Ins. Co., 87 NY2d 308, 319-320 [1995].) A good faith claim will be dismissed as redundant if it merely pleads that defendant did not act in good faith in performing its contractual obligations. (See Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 426 [1st Dept 2010] [dismissing a good faith and fair dealing claim because it arose from the same facts as the breach of contract claim].) Claims for breach of good faith and fair dealing are not duplicative when claims are not directed at all of the defendants and where claims are not predicated on contractual terms that form the basis of the breach of contract claim. (See e.g. Forman v Guardian Life Ins. Co. of Am., 76 AD3d 886 [1st Dept, Sept. 21, 2010] [holding that a good faith and fair dealing claim was not duplicative because the breach of contract claim was based on a warranty provision that did not appear in the other contracts].)
This action is virtually similar to MBIA Ins. Co. v Residential Funding Co., LLC (26 Misc 3d 1204[A], 2009 NY Slip Op 52662[U], *7 [2009]; contra MBIA Ins. Co. v Countrywide Home Loans, Inc., Sup Ct, NY County, Apr. 7, 2010, index No. *866 602825/08, slip op at 16), in which MBIA pleaded that the defendant breached its duty of good faith and fair dealing by not performing its obligations as servicer, by not adhering to the underwriting standards, and by contributing nonconforming loans to the mortgage pools. I held that all MBIA had done was “pick out clauses of the parties’ written agreements” that it felt Residential Funding Company (hereinafter RFC) did not comply with and added “that RFC’s non-performance was in ‘bad faith.’ ” (2009 NY Slip Op 52662[U] at *7.) Here, MBIA has done the same thing by reiterating its breach of contract claims while adding bad faith to its allegations. Virtually identical allegations appear in count IV (complaint lili 137-140), where MBIA maintains that GMAC breached the Servicing Agreement by failing to collect payments, by failing to initiate contact with the borrowers, and by failing to maintain records for the loans. Likewise, MBIA’s allegations of lack of access to information and the failure to comply with the underwriting standards are duplicative of MBIA’s other breach of contract claims, and the allegations that GMAC contributed nonconforming loans to the mortgage pools are set forth in count III of the complaint. (Complaint 1HÍ125-127.) Thus, MBIA’s claims are duplicative of the allegations set forth in the third and fourth causes of action. Accordingly, the motion to dismiss the good faith and fair dealing claim is granted.
For the foregoing reasons, it is hereby ordered that defendant’s motion to dismiss count I of the complaint is denied, ordered that defendant’s motion to dismiss counts II and VI of the complaint is granted, and it is further ordered that defendant shall serve and file an answer to the remaining claims within 20 days of service of a copy of this order with notice of entry.