Security Pac. Natl. Bank v Evans (2019 NY Slip Op 06138)





Security Pac. Natl. Bank v Evans


2019 NY Slip Op 06138


Decided on August 13, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 13, 2019

Friedman, J.P., Renwick, Richter, Manzanet-Daniels, Oing, JJ.


8389 22899/92

[*1]Security Pacific National Bank, Plaintiff-Respondent,
v
Tracie Evans, Defendant-Appellant, Arnold Lepelstat, et al., Defendants.


Tracie Evans, appellant pro se.
Belkin Burden Wenig & Goldman, LLP, New York (Magda L. Cruz of counsel), for respondent.



Order and judgment (one paper), Supreme Court, New York County (Gerald Lebovits, J.), entered April 27, 2017, which vacated and cancelled an order, same court (Sherry Klein Heitler, J.), entered on or about February 27, 2007, reinstated an order, same court and Justice, entered June 7, 2002, and a referee's deed of sale, and awarded CitiMortgage, Inc., as successor in interest to the named plaintiff, $357,000, less any monies defendant Tracie Evans had paid to nonparty Berkman, Henoch, Peterson & Peddy, P.C. or into court after April 2007, affirmed, without costs.
On a prior appeal in this case, we held that a trial was necessary to determine (1) "whether Citimortgage breached the implied covenant of good faith by failing to confirm that its [February 21, 2007] letter[], rather than the credit report, gave an accurate account of defendant's payment history" (62 AD3d 512, 514 [1st Dept 2009]), and, if that question were answered in the affirmative, (2) "whether the erroneous credit report was the cause of defendant's inability to perform her obligations under the settlement agreement" (id.). On remand, after a nonjury trial, the court answered both questions in the negative and reinstated the transfer of title to CitiMortgage. Upon defendant's appeal, we affirm.
Initially, we reject defendant's contention that the trial should have been adjourned. Given that this action was commenced in 1992 and that our prior decision remanding the matter for a trial on the aforementioned issues was issued in May 2009, the various Supreme Court Justices who handled this matter providently exercised their discretion in declining to grant defendant a further adjournment of the trial beyond January 31, 2017, the date on which the trial commenced. According to plaintiff — and not contradicted by defendant — the court told defendant in April or June 2016 to obtain a lawyer by a date in November 2016. Thus, defendant had ample time in which to retain counsel before the trial actually began at the end of January 2017.
Turning to the merits of defendant's claim, we perceive no basis on which to disturb the trial court's determination. As articulated by the Court of Appeals, the standard of review on an appeal from a decision based on findings of fact, resting in large measure on determinations of the credibility of witnesses, made by the court after a bench trial, is as follows:
"[T]he decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992] [internal quotation marks omitted]; see also e.g. D.S. 53-16-F Assoc. v Groff Studios Corp., 168 AD3d 611 [1st Dept 2019]; PSKW, LLC v McKesson Specialty Ariz., Inc., 159 AD3d 599 [1st Dept [*2]2018]; Rubin v George, 136 AD3d 447, 448 [1st Dept 2016]; LeGrand v Ganich, 122 AD3d 411 [1st Dept 2014]).
Supreme Court's rejection of defendant's claim — a claim based on testimony not only lacking support in the contemporaneous documentary evidence, but inconsistent with that evidence — more than passes muster under this highly deferential standard.
This action, which seeks to foreclose the mortgage on defendant's Park Avenue South condominium, was commenced in 1992 [FN1]. On January 11, 2007, the Court of Appeals dismissed, on jurisdictional grounds, defendant's appeal from this Court's affirmance of an order reinstating a judgment of foreclosure and sale in favor of plaintiff (see 31 AD3d 278 [1st Dept 2006], appeal dismissed 8 NY3d 837 [2007]). Thereafter, although the dismissal of the appeal apparently entitled plaintiff to proceed with the foreclosure, the parties entered into a settlement agreement, dated January 31, 2007, which afforded defendant the opportunity to pay off the balance of her indebtedness if she were able to obtain refinancing and close the transaction within 60 days, "time being of the essence." Ultimately, the time-of-the-essence deadline under the settlement agreement was extended to April 13, 2007. To help defendant obtain new financing, plaintiff issued "pay-off" letters confirming that it would issue a full satisfaction of its mortgage "upon receipt of $880,000 in bank or certified funds" on or before the prevailing due date.
Because defendant's credit reports at the time inaccurately stated that she was $65,000 in arrears on the mortgage and had made 45 payments that were each four to six months late, plaintiff issued, in addition to the payoff letters, a letter, dated January 29, 2007, attesting that "as of April, 2003, such debt [on the mortgage] has not been in default and there are no outstanding late fees and/or charges owed hereon from such date." At defendant's request, plaintiff subsequently issued a new letter to similar effect, dated February 21, 2007, which stated:
"Please update [defendant's] CitiMortgage Account . . . to reflect that since April 2003, no payments to CitiMortgage were due nor have any late charges or arrears been assessed. Please revise and correct [defendant's] credit report to reflect this information and mark all payments since April 2003 as current with no lates [sic] as well as removing the $65,000 arrears listed thereon."
Notwithstanding the foregoing efforts, defendant failed to obtain the refinancing necessary to consummate the settlement agreement by the adjourned deadline of April 13, 2007. In opposing plaintiff's subsequent efforts to reinstate the judgment of foreclosure, defendant argued that plaintiff had violated the implied covenant of good faith and fair dealing by refusing requests by potential new lenders for verification of the corrective credit information in the aforementioned letters of January 29 and February 21 (the corrective letters). Although Supreme Court rejected this argument, upon defendant's appeal, this Court reversed (see 18 Misc 3d 1123[A], 2008 NY Slip Op 50189[U] [Sup Ct, NY County 2008], revd 62 AD3d 512 [1st Dept 2009]). In reversing, we held that a trial was necessary to determine (1) "whether [plaintiff] breached the implied covenant of good faith by failing to confirm that its [corrective] letters, rather than the credit report, gave an accurate account of defendant's payment history" (id. at 514), and, if that question were answered in the affirmative, (2) "whether the erroneous credit report was the cause of defendant's inability to perform her obligations under the settlement agreement" (id.).
On remand, after an interval of almost eight years, during which there was another interlocutory appeal to this Court (148 AD3d 465 [1st Dept 2017]), the matter went to trial on January 31, 2017. Only three witnesses testified: (1) defendant; (2) Tom Trivisani, a mortgage [*3]broker who had attempted to assist her; and (3) Andrew Roth, Esq., the attorney who had represented plaintiff in this matter at the relevant time. The attorney who had represented defendant at the relevant time, David Worth, Esq., had passed away before trial. Defendant was represented by counsel at the trial.
Defendant testified that, while at her attorney's office in March 2007, she had listened to a speakerphone conversation between her attorney (Worth) and plaintiff's attorney (Roth), in which Roth refused Worth's request that plaintiff provide verification of the February 21 letter to First Platinum Capital, the first potential lender to which defendant submitted an application. After the First Platinum loan failed to materialize, Trivisani, who became involved in the matter in April 2007, testified that he had found another lender (World Savings Bank [WSB]) that was prepared to provide financing, but that, when he called Roth at 5:30 p.m. on April 13 — the time-of-the-essence due date — to request that similar verification be provided to WSB, Roth refused and abruptly terminated the conversation. Roth testified that, given the passage of time, he had no recollection of either of the foregoing alleged conversations or of any verification issue having been raised with regard to this matter.
The trial court found that defendant failed to sustain her burden of proving either that plaintiff had breached the implied covenant of good faith and fair dealing or that any such breach was the cause of her failure to obtain new financing. While it found that defendant had testified credibly, the court was not persuaded by her account of the alleged speakerphone conversation between Worth and Roth in March. The court emphasized that there was no documentary evidence that any potential lender had requested verification of the corrective letters; that a two-page, single-spaced letter, dated March 30, 2007, from Worth to Roth made no mention of any need for verification of the corrective letters; and that no such speakerphone conversation is described in a 2007 affirmation by Worth included in the record [FN2]. In light of this lack of corroboration, the court appears to have concluded that defendant most likely "misunderstood" the lawyers' March speakerphone conversation.
The court's finding concerning the March 2007 speaker-phone conversation is strongly supported by Worth's aforementioned March 30 letter to Roth, which — while saying nothing at all about a need to provide verification of the corrective letters — does ask for issuance of a new payoff letter and for an extension of the payoff deadline to April 13. Plaintiff complied with both of these requests. In fact, it subsequently faxed Worth a new payoff letter, dated April 3, that was drafted exactly as he had requested, including the removal from the letterhead of a notation that the letter came from plaintiff's "Default Research and Litigation" office. Notably, the March 30 letter concludes with the following statement of gratitude to plaintiff: "Now that this is finally near the end (and actually with a good result for everyone'), my client asked me to thank you and your client for your help in getting this done." Needless to say, the trial court was entitled to find this closing entirely inconsistent with defendant's claim that plaintiff was, at that very time, preventing her from obtaining a new loan by refusing to verify a letter that it had previously issued.
The court was also unpersuaded by the testimony of Trivisani, the mortgage broker, concerning events in April 2007. Upon questioning by the court itself, Trivisani conceded that he had not called Roth to request, on behalf of WSB, verification of the corrective letters until 5:30 p.m. on Friday, April 13, 2007 — the very date to which the time-of-the-essence payoff deadline had been extended. The court did not credit Trivisani's testimony that he thought the transaction could still be closed on the evening of April 13 after he had raised WSB's alleged verification request with plaintiff's attorney for the first time after the close of business that day. Moreover, the alleged post-close-of-business call was preceded by a letter that Trivisani had faxed to Roth at 3:45 p.m. the same afternoon — a document that said nothing about a need to verify the corrective letters. Trivisani's April 13 fax letter to Roth reads in its entirety as follows:
"The Evans loan has been approved with World Saving Bank (Wachovia Bank). [*4]We are now scheduling the exact time of the closing but it will definitely close either Monday afternoon or Tuesday at the latest depending on the bank attorney's schedule. We need to receive your wiring instructions and/or other payment instructions for CitiMortgage Inc. and an updated payoff letter — the same as the one you had written on April 2, 2007.
"Please expedite this letter as it must be included in the final package that is already prepared.
"Should you have any questions, please feel free to call."[FN3]
Beyond the lack of corroboration for Trivisani's testimony, the court found that his credibility was substantially impeached by his having answered "no," on a uniform residential loan application he had filled out for defendant, to questions asking — as of the date on which defendant and Trivisani signed the form (April 10, 2007), during the pendency of this action — whether defendant was "a party to a lawsuit" and whether she had "directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment."[FN4] Trivisani's credibility was further impaired by his admission that, although aware of this lawsuit, he had destroyed his file on this matter. The court also questioned why WSB, or any potential lender, would have entrusted the task of verifying the corrective letters to Trivisani, a mortgage broker whose sole interest was in closing a deal. In this regard, the court's findings are also supported by the consideration that any potential lender presumably could have contacted plaintiff directly for verification of the corrective letters, both of which were signed by Lori Shipley-Joyce, an assistant vice president in plaintiff's default research and litigation department at its office in Frederick, Maryland. If verification of the corrective letters were required, it is not apparent why a lender would have had the request made on its behalf either by defendant's attorney or by a mortgage broker. Nor is it apparent why a lender would have directed the verification request to Roth, plaintiff's outside counsel in this litigation, rather than to the relevant desk at plaintiff's offices.
With regard to causation, the court found that, even if Trivisani's testimony were credited, Roth's refusal to furnish WSB with verification could not have been the cause of defendant's failure to obtain refinancing by the April 13 time-of-the-essence deadline. The court reached this conclusion based largely on the timing of the events in question. Specifically, the application for the WSB loan was not signed until April 10, and — even more tellingly — Trivisani, by his own account, had not asked for such verification until after the close of business on April 13. In short, Trivisani's efforts, as he described them, simply came too late to have brought about a closing by the due date.
Besides the tardiness of Trivisani's alleged request for verification, there is, on this record, substantial reason to doubt that defendant would have been able to obtain a new loan in any event. Defendant did not call a witness from any potential lender to testify, nor did she offer into evidence any document from a potential lender indicating that a new mortgage would be forthcoming, so long as the corrective letters were verified. Moreover, the title report on the condominium reflected liens based on debts owed to creditors other than plaintiff, as discussed in Worth's March 30 letter.
In view of the foregoing, even if reasonable disagreement with the trial court's findings is [*5]possible, it cannot be said that those findings are so contrary to the weight of the evidence, or so obviously inconsistent with "any fair interpretation of the evidence" (Thoreson, 80 NY2d at 495), as to warrant reversal. Indeed, even without regard to the deferential standard of review, the court's findings of fact are, in our view, the most reasonable interpretation of the record. With regard to the credibility of Trivisani, in particular, that the dissent is unaware of his having had a "motive to lie" does not mean that the fact-finding court was bound to credit his testimony simply because plaintiff's sole witness (whose memory of events 10 years in the past had understandably faded) did not directly contradict his account of their alleged conversation of April 13. The lack of documentary corroboration for Trivisani's testimony about his interaction with Roth on April 13, 2007 (even from the fax Trivisani sent to Roth that very day), the troubling misstatements he transcribed and endorsed on defendant's loan application, and his dubious claim that he had raised the verification issue with plaintiff for the first time at the close of business on the Friday payoff deadline (apparently with the expectation that it would be extended to the following Monday or Tuesday) — all of this provides ample support for the court's rejection of Trivisani's testimony. Moreover, the dissent does not address the court's finding that, even if plaintiff refused to verify the corrective letters, it was not any such conduct by plaintiff but defendant's tardiness — her failure to sign a loan application to WSB until three days before the deadline, and her broker's failure to ask for verification until the close of business on the date of the deadline itself — that was the cause of defendant's failure to obtain a new loan.
All concur except Renwick and Manzanet-Daniels, JJ. who dissent in a memorandum by Manzanet-Daniels, J. as follows:




MANZANET-DANIELS, J. (dissenting)


I would vacate the money judgment in CitiMortgage's favor. I accordingly dissent.
Defendant attempted to refinance her apartment in accordance with a settlement agreement between the parties, but alleged that she was hindered in doing so because of an admittedly incorrect credit report that erroneously listed that she had made late payments on 45 occasions and was in arrears of $65,000. Although CitiMortgage issued a corrective letter, it was contended that the information in the letter needed to be verified because it conflicted with the information in the credit report. In a previous decision, we remanded for consideration of two questions: whether CitiMortgage breached the implied covenant of good faith by failing to confirm that its letters, as opposed to the credit report, accurately reflected defendant's payment history; and whether the erroneous credit report was the cause of defendant's inability to perform her obligations under the prior settlement agreement.
The trial court's answers to the questions posed in our prior decision are against the weight of the evidence (see generally Matter of Allen v Black, 275 AD2d 207, 209 [1st Dept 2000]; De Mayo v Yates Realty Corp., 35 AD2d 700, 701 [1st Dept 1970], affd 28 NY2d 894 [1971]). Although the court found defendant to be "honest and accurate," it disregarded her testimony that in early March 2007, she was present when David Worth (her then attorney, who has since passed away) told Andrew Roth (CitiMortgage's attorney) that someone would call him to verify CitiMortgage's February 21, 2007 letter. Roth refused to confirm or verify that the CitiMortgage letter, as opposed to the credit report, contained the accurate account of defendant's payment history.
After numerous attempts to obtain financing fell through, defendant in early April 2017 contacted Thomas Trivisani, a registered mortgage broker. Trivisani informed defendant that World Savings Bank was interested in giving her a mortgage loan for her apartment. While the court had doubts about Trivisani's testimony, he did not stand to gain financially from the transaction and had no motive to lie [FN5]. Unlike Roth, Trivisani was familiar with the mortgage [*6]approval process, having done some 257 closings. Trivisani testified that the underwriter for World Savings Bank required specific verifications, including bank statements and credit reports. Equifax was charged with verifying the information in defendant's credit report, but the credit bureau never received a response from plaintiff. The underwriter then appealed to Trivisani for assistance in obtaining verification of the CitiMortgage letter. Trivisani testified that he called Roth at approximately 5:30 p.m. on April 13, 2007. According to Trivisani, Roth refused to verify the Citimortgage letter, maintaining that the letter sufficed and he had no obligation to verify anything.
Roth — plaintiff's sole witness — did not contradict either defendant or Trivisani; he simply did not remember what had happened some 10 years earlier [FN6]. When he became aware of problems with defendant's credit report, he testified that he took no action to notify any credit agencies. He did not recall speaking to anyone from Equifax. Yet he was aware that if defendant failed to close by April 13, she would be in breach of the settlement agreement. On April 16, Roth sent a letter to defendant's attorney informing him that she was in breach of the settlement agreement.
The evidence showed that the erroneous credit report was the reason defendant could not fulfill her obligations under the settlement agreement; indeed, no other reason has ever been shown. Had defendant been able to refinance her apartment within the court-imposed deadline, she would not now face the forfeiture effected by the majority's ruling.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 13, 2019
CLERK



Footnotes

Footnote 1:Although the caption has not been amended, the action is now being prosecuted by CitiMortgage, Inc., as mortgage servicer and attorney-in-fact for Banker's Trust Company of California, N.A., the current holder of the mortgage. For ease of reference, we refer to CitiMortgage as "plaintiff."

Footnote 2:Neither is any such speakerphone conversation described in a 2007 affidavit by defendant included in the record.

Footnote 3:Although the foregoing letter anticipates a closing the following week, the payoff deadline under the settlement agreement was never extended beyond April 13, the date of the letter.

Footnote 4:The court noted that it considered Trivisani, as a professional in these matters, and not defendant, to be responsible for these misstatements.

Footnote 5:Trivisani closed his business in 2009 following the financial crisis.

Footnote 6:Roth knew little about the closing process. He testified that although he was a lawyer, he did not do mortgage closings and "[was] not sure [he] kn[e]w what a mortgage is."